Mississippi State Highway Commission *v.* Spencer, et al.

No. 40651 March 24, 1958 101 So. 2d 499

156

*Satterfield, Shell, Williams & Buford, Matthew Harper, Jr.,* Asst. Atty. Gen., Jackson, for appellant.

158

*Wright, Overstreet, Kuykendall & Perry,* Jackson, for appellees.

162

ARRINGTON, J.

The complainants, E. O. Spencer, Mrs. Elizabeth Knox Swayze and Mrs. Olivia Knox Chamblin, appellees here, filed bill of complaint against the Mississippi State Highway Commission in the Chancery Court of the First Judicial District of Hinds County. From an adverse decree the appellant, State Highway Commission, appeals.

The appellees alleged in their bill that they were the owners of Lot 49, consisting of 9 acres according to the official map of the City of Jackson, Mississippi, prepared by Henry C. Daniel in 1875, less one acre formerly conveyed and less that part conveyed by E. O. Spencer and Rush H. Knox to the appellant for right of way purposes. The land is located on the west side of a continuation of South State Street, now U. S. Highway 51, bounded on the south by U. S. Highway 80 and the Cloverleaf, and on the north by Rankin Street. The land is divided approximately in half by Town Creek running from west to east. The bill further alleged that on September 13, 1955, the appellees petitioned the Highway Commission for reasonable ingress and egress from said land south of Town Creek to Highways 51 and 80, or either of said highways. Petition was also filed as to the land north of Town Creek. The appellant, on September 14, 1955, denied all access to Highways 51 and 80 to the land south of Town Creek for the reason that ingress and egress would create additional traffic hazards to the public; that ingress and egress on the land north of Town Creek would be granted to the land fronting on Highway 51 on proper application being filed.

The bill charged that complainants have a vested property right to access to the highway, and that they have never conveyed that right; and under the orders of the Commission, no access is permitted by appellant from the land south of the Creek to the highway. It charged that the property constitutes two separate economic units, and the orders of the Commission denying access from the land south of the Creek are arbitrary and unreasonable, and constitute a cloud on complainants' title; that complainants are further entitled to a mandatory injunction requiring defendant to allow them access from south of the creek and that denial thereof would be a confiscation of their property without due compensation in violation of Section 17 of the Mississippi Con-

stitution of 1890. Hence the bill prayed that the court cancel defendant's claim to completely restrict access to the highway from the land south of the creek, and to enjoin defendant from interfering with access. It asked that in the event the court determine that complainants have only limited access, it should determine location for such access, enjoin interference therewith, and award complainants damages as to that frontage on which access is denied. If the court will not permit any access to their property south of the Creek, the bill prayed that the court would award complainants damages in the amount of $90,000 for the wrongful taking of such property rights.

Appellant's answer denied the allegations of the bill and asserted that the 1939 deed to the Commission conveyed to it the right to deny access to the highway. It denied that the property north and south of the Creek constitutes two separate economic units, and denied that it should be required to pay any damages for the building of a bridge or surface road. The answer admitted the Commission had refused complainants access south of the Creek from the highway, but it denied any liability for making compensation to complainants. The Commission filed a cross-bill asserting that it was entitled to a decree cancelling all claim of complainants to the right of access south of Town Creek as clouds upon the title of the land conveyed to it in 1938, and confirming in the Commission as valid the acts of the defendant by virtue of which complainants were denied access to the land south of the Creek.

The appellees filed an answer to this cross-bill denying that cross-complainant, the Commission, was entitled to any relief on its cross-bill.

The opinion of the Chancery Court held that the properties north and south of Town Creek constitute two separate economic units; that the appellees, as abutting property owners, have a special right of easement to the

highway for access purposes, which is a property right that cannot be taken from them without due compensation. It was said that the Commission in the interest of public safety has the power to prohibit access at danger points, but when it does so, it must pay compensation to abuting property owners. The Commission has the right to prohibit access south of the 'Creek, but the appellees have a correlative right to compensation for the taking of such property right.

The court found that the 1938 conveyance to the Commission did not convey access rights, since the Commission did not have the power at the time to purchase access rights, and this was not within the contemplation of the parties. It said the Commission has denied complainants access to the highway from the road south of the Creek, although it is a separate economic unit from that north of the creek. The measure of damages is the value of access to the property south of the Creek from the highway. Since the policy of the Commission has been to provide service roads where direct access is denied, and the Commission has denied access from the road south of the Creek and thus deprived complainants of vested, property rights, the Commission was required to construct a bridge across Town Creek, on its right of way, with a service drive from Highway 51 north of the Creek to the bridge. Appellees may construct at their expense the remainder of the service road on the Commission's right of way.'

Hence the final decree adjudicated the facts stated in the opinion of the court. The decree stated that because of the heavy traffic on Highway 51, direct access from the land south of the Creek should be denied in the public interest, as prayed for in the cross-bill of complainant; ".. . . . but only on the condition that the Commission do equity by furnishing at its expense a satisfactory substitute means of access from said land south of Town Creek by way of the construction of a bridge across said

Creek and a service road from said bridge to the highway north of said Creek.

"The Court further finds that the public interest and welfare will best be served by having the State Highway Commission of the State of Mississippi in this instance, construct, maintain, and control the substitute means of access as hereinafter directed; and that in so doing, the complainants and cross-defendants will be adequately compensated for the denial of direct access herein, and any and all damages which might otherwise be required to be paid therefor will be completely mitigated and the aforesaid cloud cast on complainants' and cross-defendants' title will thereby be removed.

"The court further finds that an award of monetary damages alone will not adequately compensate the complainants and cross-defendants, but does find that the construction of said bridge and road as herein directed will compensate the complainants and cross-defendants.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the prayer of the cross-bill of complainants herein be granted to the extent that direct access from the aforesaid lands south of Town Creek to said U. S. Highway 51 and U. S. Highway 80 be, and the same is hereby, denied to complainants and cross-defendants, but only upon condition that defendants and cross-complainants furnish a substitute means of access by way of construction and maintenance of a bridge and service road as hereinafter set forth."

The decree concluded with the direction that the defendant and cross-complainant, State Highway Commission, shall within one year construct at its expense a bridge and service drive from U. S. Highway 51 north of the Creek to the bridge, upon the Highway Commission's right of way. Hence the clerk of the court was ordered to "issue a writ of injunction requiring the defendant and cross-complainant to do that hereinabove required of it in this decree."

It will be observed that in the final decree the court granted the prayer of the cross-bill and denied direct access from the land south of the Creek on condition that the Commission furnish a substitute means of access by construction of the bridge and service drive. The decree precedently found that appellees had a vested property right of access to the separate parcel of land south of the creek and had not conveyed that right away; that the Commission had no right to deny such access without first purchasing such right, and that the Commission's denial constituted a cloud on complainants' title. However, since the public safety demanded denial of access south of the Creek, the court so ordered, on condition that the Commission do equity by "building the bridge and service road" north of the creek; and it adjudicated that in so doing the appellees would be adequately compensated for denial of direct access, and the cloud on their title would thereby be removed.

The record and exhibits in this case are voluminous— our reason for citing at length the opinion and decree in part. We have examined most of the authorities cited in the lengthy briefs filed herein, however, in view of the conclusion that we have reached, the case is simplified.

 The appellant first contends that under Chapter 47, Laws of 1930, commonly known as the Stansel Act, the Commission was given the power to make rules regulating traffic upon and entering State highways, including the regulation and restriction of private driveways. We assume for the purpose of argument that the Commission has the power to make reasonable regulations, however, in this case we find that this is not regulation but a prohibition of all right of access to the property south of Town Creek. The law in this State is well settled that the right of ingress and egress to an abutting property owner is a property right and cannot be taken without compensation therefor. In the case of Theobold v. Railroad, 66 Miss. 279, the Court said:

"The laying out of a public street creates two co-existant rights—one, belonging to the public, to use and improve the street for the ordinary purposes of a street—the other, to the abutting owner, to have access to and from his property over the street, and to make such use of the street as is customary and reasonable. Both are valuable, and the one is as inviolable as the other. It would be as unjust and unwarranted for the public to use and appropriate the street, so as to impair or destroy the rights of the abutting owner, without his consent and without compensation, as it would be for him, by a like course of conduct, to impair or destroy the rights of the public.

"So that, it appears that the abutting owner has special interests and rights in a public street, which are valuable, and indispensable to the proper and beneficial enjoyment of his property. His right to use the street as a street, is as much property as the street itself, and neither the public, nor a corporation, nor an individual, can lawfully deprive him of it, against his will, without compensation. If the street is needed for the purposes of a railroad, or by any other purpose inconsistent with the ordinary uses of a public street, the rights and interests of the abutting owner must be obtained, with his consent, or by the exercise of the right of eminent domain, as in other cases of taking private property for public use."

In Morris v. Covington County, 118 Miss. 875, 80 So. 337, the Court said: "The abutting landowner on a public highway has a right of easement and user in the public road for access purposes, and this is a property right which cannot be damaged or taken from him without due compensation. The right of access is appurtenant to his land and his private property. To destroy this right is to damage his property."

In Smith, et ux, v. Mississippi State Highway Commission, 183 Miss. 741, 184 So. 814, it was held:

"Section 17 of the Constitution prohibits both the taking and the damaging of private property for public use. It may be damaged without the taking. Parker v. State Highway Commission, 173 Miss. 213, 162 So. 162. The diminution of the value of abutting property by interference with ingress and egress to and from it is damage within the meaning of the Constitution. Curry v. Railroad Co., 87 W. Va. 548, 105 S. E. 780, 22 A. L. R. 138." See also Hamilton, et al v. Mississippi State Highway Commission, 220 Miss. 340, 70 So. 2d 856; 25 Am. Jur., Highways, Sec. 154; Elliott on Roads and Streets, 4th Ed., Sec. 882.

Counsel for appellant briefed his case on the theory that the land south and north of the Creek comprised one unit. Hence his contention is that this is a regulation of access and not a denial of access. Counsel states: "Clearly the Highway Commission in any state has the right to regulate traffic including its entry into the traffic stream without the necessity of paying compensation therefor. If such regulation requires a complete denial of access to an abutting property owner which was not contemplated in the original conveyance or taking, then the highway commission has the right to determine whether it will select the alternative of continuing and providing such access to a state-maintained highway by the construction of a service road or absolutely and finally denying such access and paying compensation therefor. But this does not give a right of recovery upon the exercise of reasonable regulation under a right existing at the time of the original conveyance or taking."

 The Chancery Court found that the land comprised two economic units; that there is a natural division of the property by Town Creek into two separate units; that the part north of the Creek has been developed and utilized as commercial property for some years and that the part south of Town Creek has not been developed. We think the court's finding was correct

and it was amply supported by the evidence. Access to the land north of the Creek does not afford access to that lying south of the Creek. The Creek is a natural barrier between the two tracts of land, and as far as access is concerned, the two tracts must be treated as if they were not contiguous. Cf. Miss. State Highway Commission v. Dodson, et al., 207 Miss. 229, 42 So. 2d 179.

 ██ It is further contended that the consideration paid for the original deed and release from Spencer and Knox included any damages suffered by reason of any restriction of access reasonably required to protect traffic upon the highway. The deed in question appears to be on a standard form, and, omitting the description of the land, provides: ''It is further understood and agreed that the consideration herein named is in full payment and settlement of any and all claims or demands for damage accrued, accruing, or to accrue to the grantors herein, their heirs, assigns, or legal representatives, for or on account of the construction of the proposed highway, change of grade, water damage, and/or other damage, right or claim whatsoever.'' The chancery court found that in 1938 the Commission did not have the power to acquire nor the right to purchase from an abutting landowner the access rights to highways; that this right was not acquired until 1949 under Chapter 6, Laws of Extraordinary Session 1949. In the recent case of Berry v. Southern Pine Electric Co., 222 Miss. 260, 76 So. 2d 212, the Court said:

''The deed of conveyance from the appellant to the State Highway Commission on March 13, 1939, is similar in all material respects, except as to the description of the land, number of the highway project, the amount of the consideration, etc., to the deed of conveyance executed by J. S. Whitworth and wife on January 4, 1939, to the Mississippi State Highway Commission, which was involved in the case of Whitworth v. Mississippi

State Highway Commission, 203 Miss. 94, 33 So. 2d 612, 613, and which is fully set forth in the report of that case. Each of the said conveyances is a warranty deed, and each recites that it is 'understood and agreed that the consideration herein named is in full payment and settlement of any and all claims or demands for damage accrued, accruing, or to accrue to the grantors herein . . . . . . for or on account of the construction of the proposed highway, change of grade, water damage, and/or any other damage, right or claim whatsoever.' We are therefore of the opinion that the consideration paid was only 'for or on account of the construction of the proposed highway' mentioned in the deed, and for any other damage, right or claim whatsoever resulting from the construction of the proposed highway; and that if the grantor is presumed to have executed the deed in the light of the sections of the Code hereinbefore quoted, then the grantee in the right of way deed is presumed to have accepted the deed in the light of Section 17 of the State Constitution, supra, which conferred upon the landowner the right to recover compensation for any damage to his property which may not have been compensated for in the consideration paid for the deed.''

It was further said by the Court that in the Whitworth case, supra, the Highway Commission acquired no greater estate than it was entitled to condemn under eminent domain, and that the general rule is that the power of eminent domain should be construed favorably to the landowner and that no greater estate can be taken than the particular use requires. It follows that we are of the opinion that the Commission, under the deed, did not acquire the right of access.

The appellant also argues that the appellees' claim, if any, is barred by the statutes of limitations, and that the appellees have not exhausted their administrative remedy, and the suit is prematurely brought. We find these assignments to be without merit.

The end result of the decree was to work out an equitable solution of the controversies of the parties to this suit. The questions with reference to this aspect of the decree is whether the trial court had the power to make this adjustment of the equities of the parties, (a) by a conditional decree and (b) by an order to the Commission to construct the bridge and service drive.

 The relief granted was by means of the issuance of a conditional decree in favor of cross-complainant. It is well established that a court of chancery may so shape its decrees as to effect justice between the parties. This is often done by granting relief on terms or on certain conditions to be performed or observed. ██ ██ When a party resorts to chancery for redress, "he thereby submits himself to such equitable conditions as directly connect themselves with the subject, and . . . . he may be required to do equity as a condition to the allowance of relief." Griffith, Mississippi Chancery Practice (2d Ed. 1950), Sec. 615, discusses this established practice of granting relief on conditions. See also ibid., Sec. 376, p. 360, Note.4a.

In 19 Am. Jur., Equity, Sec. 22, it is said: "A court of equity has power to make its granting of relief dependent upon the performance of conditions by a party litigant, if the conditions are such as are imposed in the exercise of a sound discretion and of a character calculated to satisfy the dictates of conscience. The court may thus protect and give effect to the rights of one party while awarding relief to the other. The court is not restricted by strict legal rights. In the exercise of its power, the court may require the performance of conditions which are designed to protect the rights of the parties pending appeal or to safeguard temporarily the public interest while the decree is being carried into effect."

 The use of conditions in equitable decrees is also discussed in 30 C. J. S., Equity, Sec. 602: ". . .

under the maxim that, he who seeks equity must do equity, discussed supra Secs. 90-92, a court of equity, in granting relief to plaintiff, may, in its discretion, impose any conditions thereon that may seem just and proper under the circumstances, even though there is no demand therefor by cross bill, and accordingly may require plaintiff, as a condition of the relief he asks, to acknowledge, admit, provide for, secure, or allow whatever equitable rights, if any, defendant may have, and to that end the court may, by its affirmative decree, award defendant whatever relief may be necessary to protect and enforce these rights. The courts may withhold from plaintiff the complete relief to which he would otherwise be entitled if defendant is willing to give in its stead such substituted relief as, under the special circumstances of the case, satisfies the requirements of equity and good conscience.''

■■ The chancery court had the power in its sound discretion to restrain appellees-complainants from exercising access to Highway 51 from the lot south of Town Creek, *on condition that* cross-complainant, the Commission, construct the bridge and service drive. The conditional decree here was proper on the facts, since appellees owned a right of access to the highway from the lot south of the Creek, and it could not be taken from than without due compensation or substitute means of access. Appellees were satisfied with the substitute means of access, since they did not take a cross appeal from the decree. Its effect was to compensate appellees, the landowners, for their loss of direct access by requiring the Commission to provide an indirect access to the south lot. Hence the conditional decree was proper and justified.

A more difficult question arises in the consideration of whether the chancery court was also justified in its final decree in directing issuance of a mandatory injunction to the Commission to require it to construct the bridge and service drive.

Discussing the performance of conditions in decrees, 30 C. J. S., Equity, Sec. 602, says: "The conditions of the relief do not constitute an affirmative decree against plaintiff; he may perform them or not, at his option. However, the decree is without force until its conditions are performed, and if plaintiff declies or refuses to comply with the terms imposed, the bill may be dismissed.

"Whether the conditions have been performed should eventually be settled under the eye of the court and entered of record, and not be left for determination by the parties or by ministerial officers. Hence the decree should prescribe the time and place of performance, and make provision for the subsequent determination of the question of the fact or sufficiency of performance."

■■ ■ A mandatory injunction is an extraordinary remedial process. Courts are more reluctant to grant a mandatory injunction than a prohibitory one. 43 C. J. S., Injunctions, Sec. 5. Although equity has jurisdiction to issue them, they should be confined to cases where it is the only remedy which will be effectual. 43 C. J. S., Injunctions, Sec. 5, states: "Even if the right is clear, it does not follow that a mandatory injunction must be granted, and such injunctions will be issued only in cases of extreme necessity, where the right invaded is material and substantial, and where adequate redress at law is not afforded. Mandatory injunctions will never be granted unless extreme or very serious damage at least will ensue from withholding that relief; nor will they be issued in doubtful cases. . . . ." Thomas v. Mississippi Power and Light Co., 170 Miss. 811, 152 So. 269 (1934); Mississippi Power & Light Co. v. McColgan Hotel, 152 So. 271 (1934). 28 Am. Jur., Secs. 17-22, states that a mandatory injunction is a rather harsh remedial process and is not favored by the courts. It is not regarded with judicial favor and is used only with caution and in cases of great necessity. The case must be one clearly disclosing irreparable injury to the complainant.

A mandatory injunction will not issue to control the exercise of discretionary acts by public officers or servants. 28 Am. Jur., Injunctions, Sec. 162. A leading case on this question is Mayor and Aldermen of the City of Vicksburg v. Vicksburg Waterworks Co., 202 U. S. 453, 26 S. Ct. 660, 50 L. Ed. 1102 (1906). The United States Circuit Court issued a mandatory injunction to the City requiring it to extend a sewer and construct an outlet therefor, so as to discharge the sewage below the intake of the waterworks. It was held that the trial court had no authority to issue a mandatory injunction requiring the city to construct the sewer extension, since this was a discretionary act with the city officials, and the exercise of this authority was vested in the municipality and not in the courts.

In Madison County v. Mississippi State Highway Commission, 191 Miss. 192, 198 So. 284 (1940), the court refused to issue a mandatory injunction to compel the commission to cause to be appraised the pavement on certain parts of two highways and to pay the county therefor as provided by statute. It was held that the remedy, if any, was by mandamus. The Court said: ''The chancery court was clearly without jurisdiction to grant a mandatory writ of injunction to compel the State Highway Commission to perform a legal duty alleged to have been enjoined upon it by the statutes here invoked.'' See also Griffith, Mississippi Chancery Practice (2d Ed. 1950), Secs. 442-434-436.

The chancery court was without jurisdiction to order issuance of a mandatory injunction against the Commission to require it to construct the bridge and the service road. This was a matter within the discretion of the members of the Highway Commission. Moreover, appellees have an adequate remedy in the assessment by the trial court of damages for the complete taking by the Highway Commission of appellees' right of access to the highway from the land south of Town Creek. The

rules referred to above concerning mandatory injunctions are pertinent and indicate the impropriety of a mandatory injunction here.

In brief, the conditional decree was proper and within the sound discretion of the chancery court, but that court was in error in directing in the last paragraph of the decree the issuance of a mandatory injunction against the Commission requiring the construction of a bridge and service road. Hence the decree is modified so as to strike therefrom the last paragraph thereof directing issuance of the mandatory injunction. Otherwise the decree is affirmed and the cause remanded for determination by the chancery court of damages to appellees resulting from the total denial of access to the highway from the land south of the Creek, in the event appellant elects not to construct the bridge and service road in accordance with the conditional part of the decree.

Affirmed as modified, and remanded.

*Roberds, P. J.,* and *Hall, Lee* and *Ethridge, JJ.,* concur.