GRIFFIS, P.J.,
for the Court:
¶ 1. Ricky Byrd and Vera Byrd appeal the chancellor’s decisions to award Cynthia Byrd Abney and Susie Byrd a one-half interest each in the subject property and to award attorney’s fees to Cynthia. Ricky and Vera argue that Vera should have received a constructive trust for a fee simple interest in the property.
¶ 2. Ricky and Vera raise four issues on appeal. They first argue that the decision to award Susie an undivided one-half interest in the property via a constructive trust was against the overwhelming weight of the evidence. Next, they argue that it was error for the chancellor to: give Vera the option to buy Cynthia’s undivided one-half interest in the property for $11,100.41; award a $3,500.07 insurance check for the property to Cynthia as an offset to the attorney’s fees due to her; and award attorney’s fees of $8,240.20 to Cynthia.
FACTS
¶ 8. Vera owned property in Lakeland View subdivision in Jackson County, Mississippi. In March 2002, Vera deeded the property to Ricky. Vera did so because she feared the property would succumb to her creditors’ claims. Ricky promised to deed the property back to Vera upon her request.
¶ 4. In December 2002, Ricky deeded the property to Cynthia. Ricky did so because he feared he would lose the property in his divorce. Cynthia testified that she agreed to accept the deed on the condition she incurred no expenses. Ricky testified that Cynthia promised to deed the property back to Vera. Ricky paid some of the taxes on the property. He also paid one or two years of the homeowner’s insurance premiums.
¶5. Cynthia paid $11,100.41 in homeowner’s insurance premiums. In 2007, Cynthia cancelled the joint policy that ben-efitted herself and Vera. Cynthia purchased a new renter’s dwelling insurance policy on the property with herself as the sole beneficiary.
¶ 6. Vera lived in Texas until 2005. Vera lived with Susie until 2006 when Susie moved out and to a nursing home. Vera testified that Susie did not want to live with her. Susie testified that Vera did not want her there and that Vera harassed her by placing water buckets in front of her door and moving her walker. In 2008, Vera requested that Cynthia deed back the property. Cynthia refused.
¶ 7. In January 2008, Ricky filed suit against Cynthia and alleged the breach of a fiduciary duty. Susie intervened and alleged that the home was purchased for her benefit in 1990. Susie is the mother of Vera, Cynthia, and Ricky. Susie lived at the home on the property from 1990 to 2006. Susie testified that she paid $200 a month for a one-half interest. Susie testified that the property was not titled in her name because her Social Security benefits would have been reduced.
¶ 8. On May 24, 2010, Cynthia filed her answer. In Cynthia’s answer, she stated that she agreed to deed back the property upon Vera’s request. However, that agreement was based on Vera’s reimbursement for expenses that Cynthia paid.
*1183 ¶ 9. Susie and Cynthia filed counterclaims that involved the tax and insurance expenses Cynthia had paid and the mortgage payments Susie had paid. At trial, Vera testified that the payments from Susie were rent payments, not mortgage payments.
¶ 10. The chancellor held that an undivided one-half interest in the property vested in Susie and Cynthia. The chancellor also ordered Vera and Ricky to pay Cynthia $8,240.20 in attorney’s fees, and that amount was to be offset by a $8,500.07 insurance check that the court ordered Vera to sign over to Cynthia. The chancellor gave Ricky and Vera sixty days to purchase Cynthia’s interest for $11,100.41, the amount of the expenses incurred by Cynthia for taxes and insurance on the property.
STANDARD OF REVIEW
¶ 11. In appeals from the chancery court, this Court applies a limited standard of review. McNeil v. Hester, 753 So.2d 1057, 1063 (¶21) (Miss.2000). “This Court will not overturn a chancellor’s findings of fact when supported by substantial evidence unless an erroneous legal standard [was] applied or [the chancellor was] manifestly wrong.” Grafe v. Olds, 556 So.2d 690, 692 (Miss.1990). “The standard of review employed by this Court for review of a chancellor’s decision is abuse of discretion.” McNeil, 753 So.2d at 1063 (¶ 21) (citation omitted). For questions of law, the standard of review is de novo. Id.
ANALYSIS

1. Whether the chancellor’s decision that an undivided one-half interest in the property vested in Susie was against the overwhelming weight of the evidence.

¶ 12. The chancellor held that “a constructive trust has been established in favor of [Susie,] and an undivided one-half interest in the [property] shall vest in [Susie] .... ” Ricky and Vera argue that Susie never requested a constructive trust at trial. They argue that Susie testified that she did not want any interest in the property or money returned to her.
¶ 13. However, Susie testified that she would like the money she paid back or “something out of the house.” Susie lived there sixteen years. The record demonstrates Susie was elderly, frail, confused, emotional, and at times appeared to contradict herself.
■ ¶ 14. “A constructive trust is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs, to another.” McNeil, 753 So.2d at 1064 (¶ 24). The definition of constructive trust is:
one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.
Id. (citations omitted).
¶ 15. A court of equity is authorized to create a constructive trust where there is a confidential relationship and abuse of that confidence. Id. at (¶25). Proof of fraud is not required. Id.
¶ 16. “In order for the chancellor to have properly imposed a constructive trust, he must have found that there was a confidential relationship between [Susie] and [Vera], plus substantial credible evi *1184 dence that [Vera] abused the relationship to obtain property which [she] ought not, in equity and good conscience, hold and enjoy.” Id. at 1064 (¶ 27).
¶ 17. There was testimony that Susie’s adult children agreed to help find a house for Susie and the younger children. Susie had had a bad divorce and was receiving Social Security disability benefits. Susie’s name was not on the deed because it might have adversely affected her Social Security benefits. The monthly mortgage payment, excluding taxes and insurance, was $388.97. Susie paid $200 to Vera every month. The mortgage was paid in full before April 2001. Susie had paid Vera a total of $25,910 over a ten-year period, an average of approximately $215.91 a month. The mortgage payment including escrow was $430.25.
¶ 18. After the mortgage was paid off, Susie did not make any more monthly payments. Yet, she lived in the house six more years. This further evidenced that the monthly payments were likely mortgage payments, not rent payments, since rent payments would be due even after a mortgage was paid off.
¶ 19. Substantial evidence supported the chancellor’s finding of fact that the payments by Susie were mortgage payments, and this entitled Susie to a one-half interest in the property. We find that this issue has no merit.

2. Whether the chancellor erred when he gave Vera the option to buy Cynthia’s undivided one-half interest in the property for $11,100.il.

¶ 20. A chancellor “may so shape its decrees as to effect justice between the parties.” Miss. State Highway Comm’n v. Spencer, 233 Miss. 155, 174, 101 So.2d 499, 504-05 (1958). Chancellors can do this “by granting relief on terms or on certain conditions to be performed or observed.” Id. at 174, 101 So.2d at 505. The chancellor “may thus protect and give effect to the rights of one party while awarding relief to the other.” Id. A chancellor may impose conditions “that may seem just and proper under the circumstances,” even if the parties do not demand such relief. Id. at 175, 101 So.2d at 505.
¶ 21. Vera and Ricky argue that Cynthia received title by fraud. However, the record reflects that Ricky asked Cynthia to accept the deed because Ricky was going through a divorce and did not want to lose the property. Vera and Ricky argue that Cynthia did not ask for title to the property or a constructive trust. As discussed above, the chancellor can impose conditions in equity that are just and proper, even if the parties do not ask for it. Id.
¶22. Ricky and Vera argue that the chancellor denied Vera’s requested relief based on unclean hands. They argue that unclean hands is an affirmative defense and was never raised. However, paragraph XV of Cynthia’s answer and counterclaim alleged unclean hands in regard to Vera’s actions when she deeded the property to Ricky to avoid her creditors.
¶ 23. The chancellor had the discretion to allow Vera to gain Cynthia’s one-half interest, on the condition that Vera pay Cynthia $11,100.41, which was the same amount that Cynthia had paid in taxes and insurance. The conditional decree here was proper based on the evidence, since Cynthia had paid expenses on the property, and it could not be taken from Cynthia without proper reimbursement. The effect of the chancellor’s decision was to compensate Cynthia, the deed holder, for her expenditures on the property by requiring Vera to provide $11,100.41 to gain Cynthia’s interest.
*1185 ¶ 24. “The conditions of the relief do not constitute an affirmative decree against plaintiff; [s]he may perform them or not, at [her] option.” Id. at 176, 101 So.2d at 505. If Vera does not choose to pay the $11,100.41, then Cynthia retains a one-half interest. Hence, the conditional decree here was proper and justified. We find that this issue has no merit.

3. Whether the chancellor erred when he awarded a $3,500.07 insurance check for the property to Cynthia to offset the attorney’s fees due to her from Vera.

¶ 25. This issue concerns a check that was made out to Vera, Cynthia, and Kathy Byrd (not a party to this litigation) from a Hurricane Katrina insurance claim. The effect of the chancellor’s decision was that Vera received credit for the insurance funds as an offset from the judgment against her that awarded attorney’s fees to Cynthia. Ricky and Vera fail to cite any authority on their proposition that Cynthia should not have been awarded the check because she had no equitable interest in the property. This Court has stated that it need not consider argument that is not supported by authority. Hankins v. Han-kins, 729 So.2d 1283, 1286 (¶ 11) (Miss. 1999) (citing Grey v. Grey, 638 So.2d 488, 491 (Miss.1994)). Therefore, we find that this issue has no merit.

4. Whether the chancellor erred when he awarded attorney’s fees of $8,240.20 to Cynthia.

¶26. Where “attorney’s fees are not authorized by ... contract or by statute, they are not to be awarded,” unless an award of punitive damages would be proper. In re Guardianship of Duck-ett, 991 So.2d 1165, 1179 (¶30) (Miss.2008) (citation omitted); see also Cenac v. Mur-ry, 609 So.2d 1257, 1275 (Miss.1992). Susie and Cynthia argue that attorney’s fees in this case are authorized by Mississippi Code Annotated section 11-55-5 (Rev. 2012) of the Litigation Accountability Act. We review awards under section 11-55-5 for an abuse of discretion. Prewitt v. City of Oxford, 44 So.3d 922, 926 (¶ 16) (Miss. 2010). “[W]here a party’s intentional misconduct causes the opposing party to expend time and money needlessly, then attorney’s fees and expenses should be awarded to the wronged party.” State v. Blenden, 748 So.2d 77, 87 (¶33) (Miss. 1999) (citation omitted).
¶ 27. Section 11-55-5 states, in relevant part:
[I]n any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney’s fees and costs against any party or attorney if the court ... finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.
Mississippi Code Annotated section 11-55-7 (Rev.2012) sets out the factors to be considered in determining the amount of an award of attorney’s fees.
¶28. With this issue, we must answer the question of whether there was substantial evidence in the record for the chancellor to award attorney’s fees. Ricky and Vera argue that Cynthia “filed suit for an equitable lien on the property and nothing more.” However, Cynthia’s answer *1186 and counterclaim devoted several paragraphs to her request for attorney’s fees. Cynthia argued that she had to hire an attorney to defend against Ricky’s suit, where he had no legal claim to or title in the property. Cynthia argues his suit was frivolous. In paragraph XXXII, Cynthia states she and Susie were willing to convey the property to Vera if reimbursed for Susie’s mortgage payments, improvements, and maintenance and Cynthia’s payment of insurance premiums and taxes. Cynthia did allege that she was entitled to punitive damages and attorney’s fees because Ricky and Vera’s allegations were false and fraudulent.
¶ 29. Ricky filed his complaint in January 2008. But he could not prevail, because he had no legal or equitable claim to the property because Vera had deeded him the property to hold for her due to claims by Vera’s creditors. The chancellor found that Vera acted with unclean hands to avoid creditors. The deed then went from Ricky to Cynthia because of Ricky’s divorce. Cynthia testified that she agreed to this on the condition she incurred no expenses. Ricky let the suit languish until December 2009 when Vera joined. Cynthia acted in good faith, even after being sued, by continuing to pay the insurance premiums. She also held the deed; she, in theory, could have mortgaged or sold it. There was substantial evidence in the record for the chancellor to award attorney’s fees to Cynthia. Therefore, this issue has no merit.
¶ 80. We affirm the chancellor’s decisions to: award Susie an undivided one-half interest in the property through a constructive trust; give Vera the option to buy Cynthia’s undivided one-half interest in the property for $11,100.41; award a $8,500.07 insurance check to Cynthia, offsetting the attorney’s fees due to her; and award attorney’s fees of $8,240.20 to Cynthia.
¶ 31. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. RUSSELL, J„ CONCURS IN PART AND IN THE RESULT.